**IONNO AND HIGBEE, ATTORNEYS AT LAW, LLC**
**SEBASTIAN B. IONNO, ESQUIRE**
**ATTORNEY ID 025992002**
**140 S. BROADWAY, SUITE 5**
**PITMAN, NJ  08071**
**TELEPHONE: (856) 553-6810**
**sebastian@ionnolaw.com**
**ATTORNEYS FOR THE PLAINTIFF**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GARY S. DEMARZO,<br><br>    Plaintiffs,<br><br>V.<br><br>DELAWARE RIVER AND BAY AUTHORITY, THOMAS BERRY, STEVEN D. WILLIAMS, BEN CLEDANIEL AND JOHN DOES 1 THROUGH 25, JOINTLY, SEVERALLY, AND IN THE ALTERNATIVE,<br><br>    Defendants. | Civil Action Docket No.:<br><br><br>**COMPLAINT, DEMAND FOR JURY TRIAL, AND DESIGNATION OF TRIAL COUNSEL** |

Plaintiff Gary S. DeMarzo, residing in the City of Wildwood, County of Cape May, State of New Jersey, by way of Complaint against Defendants, says:

**STATEMENT OF FACTS**

1. Jurisdiction lies in the United States District Court pursuant to 28 U.S.C. §1331, as the issue arising under this complaint is a violation of federal law.

2. Venue is properly laid in the United States District Court of the District of New Jersey, by reason of it being the location where the acts of misconduct complained of occurred pursuant to 28 U.S.C. §1391.

1

3. At all relevant times herein, Defendant Delaware River and Bay Authority (hereinafter "Defendant DRBA") was an entity created and existing pursuant to the laws of the State of New Jersey and the State of Delaware through a Congressionally approved compact and their actions and inactions caused Plaintiffs' legal rights to be violated as set forth below.

4. At all relevant times herein, Defendant DRBA was an entity created and existing pursuant to the laws of the State of New Jersey and the State of Delaware through a Congressionally approved compact and was the employer of Thomas Berry, (hereinafter "Defendant Berry"), and Steven D. Williams, (hereinafter "Defendant Williams"), and Ben Clendaniel, (hereinafter "Defendant Clendaniel") and John Does 1-25, who are members of the DRBA and who acted within and outside the course and scope of their employment with Defendant DRBA to violate Plaintiffs' legal rights as set forth below.

5. At all relevant times herein, Defendant Williams, Defendant Clendaniel and Defendant Berry are responsible to Plaintiff by reason of their knowing participation in the deprivation of Plaintiffs' statutory rights and/or by reason of their aiding, abetting, authorizing, ratifying, condoning, participating in, or conspiring with their co-Defendants to participate in and commit the wrongful acts referred to herein.

6. Plaintiff Gary S. DeMarzo (hereinafter "Plaintiff" or "Plaintiff DeMarzo") was an Airport Operational Specialist for Defendant DRBA.

7. Plaintiff DeMarzo began working for Defendant DRBA in March 2021 as an Airport Operational Specialist.

8. On October 5th, 2021, Plaintiff received his DRBA Employee Performance Appraisal, Plaintiff's evaluation score totaled "(3.50-4.49) Exceeds – "This employee demonstrates consistently excellent performance that exceeds expectation and exhibits a sustained support of the organizational/department and goals."

9. On or about March 2022 the Plaintiff's "casual" status as an employee continued.

10. On or around April/May 2022, Plaintiff DeMarzo was approached by a fellow coworker and informed of racial discrimination that he was being subjected to.

11. The coworker, Mr. Causey, is African American.

12. Plaintiff informed Mr. Causey that he was a low-level employee and that he could not change the situation for Mr. Causey.

13. However, Plaintiff informed Mr. Causey that he could not be told this information without informing a supervisor of the situation as he believed the discrimination needed to be dealt with and stopped.

14. Plaintiff informed his supervisor, Defendant Berry, of the conversation he had with Mr. Causey.

15. Defendant Berry is the Senior Operations Manager for Defendant DRBA.

16. Defendant Berry told Plaintiff that he would handle the situation.

17. On or about May 25th and 26th 2022, Defendant Berry began calling Plaintiff and requested that Plaintiff come to the airfield to discuss "operational issues". Plaintiff advised that he would not be able to accommodate the request until Plaintiff's assigned shift on May 28th.

18. On May 28th, 2022, Plaintiff DeMarzo was unjustly and illegally terminated for engaging in protected conduct by reporting allegations of discrimination to Defendant DRBA.

19. On Saturday, May 28, 2022, Defendant Williams, Defendant Berry, and Ben Clendaniel came to the airfield.

20. Defendant Williams informed Plaintiff that he was being "separated".

21. Defendant Williams refused to provide an explanation for the "separation."

22. Plaintiff continually requested an explanation and turned to Defendant Berry, Defendant Berry, refused to provide an explanation. Defendant Berry, stated "you always have done a great job for me" but refused to explain the "separation", stating this was "beyond him."

23. Defendant Williams informed Plaintiff that he would receive a letter of separation at a later time that would state a reason for the separation, but that it was due to Plaintiff "doing business with the DRBA".

24. Plaintiff explained that he does not conduct any "business" with the DRBA.

25. Plaintiff explained Plaintiff does rent a hanger from Defendant DRBA to store a personal aircraft but had disclosed such rental on his disclosure form when hired, more than a year prior.

26. Plaintiff was confused as this was the only "relationship" he has with Defendant DRBA, which was clearly articulated, vocalized, disclosed, and was rented, well before Plaintiff's employment relationship with the DRBA.

27. Defendant Williams refused to provide an explanation and just continually repeated that Plaintiff would receive a "letter."

28. Defendant Williams told Plaintiff to drive the assigned DRBA work vehicle to a different part of the facility and then to leave immediately.

29. Plaintiff was followed to the (SRE) Snow Removal Equipment Building garage by Defendant Berry.

30. Plaintiff moved and secured the work vehicle inside the SRE Garage as instructed and handed the vehicle keys to Defendant Berry, who was waiting outside of the building.

31. The Plaintiff asked again Defendant Berry what led to the circumstances of such an abrupt and immediate termination. Defendant Berry again stated he had no knowledge and was

asked to meet Defendant Williams and Defendant Clendaniel at the Operations Building at noon. Defendant Berry stated NO additional information was provided to Defendant Berry.

32. Plaintiff then left the facility without incident.

33. On July 6, 2022, Plaintiff called Defendant DRBA's Human Resources Department and contacted Mrs. Wendy Decker; Plaintiff's HR contact when he was employed by Defendant DRBA.

34. Mrs. Decker was unaware that the Plaintiff had been "separated" from the DRBA and she had not received any documents involving the action.

35. Plaintiff informed Mrs. Decker that he was reaching out to her as he had yet to receive a "letter" stating the reason for his termination.

36. Plaintiff informed Mrs. Decker of the conversation he had with Defendant Williams in reference to Defendant Williams stating that Plaintiff does "business" with Defendant DRBA.

37. Plaintiff informed Mrs. Decker that he does not do "business" with the DRBA and was confused as to the termination, so he was awaiting the "letter" to get a clearer explanation for his termination.

38. Mrs. Decker informed Plaintiff that she would investigate and call him back.

39. Later that day, Plaintiff received a call back from Mrs. Decker, who informed Plaintiff that he would not be receiving a letter as he was an at-will employee, and Defendant DRBA does not typically issue separation letters to such employees.

40. Plaintiff DeMarzo asked who Mrs. Decker received this information from, but Mrs. Decker advised she could not/ would not reveal the source of the information.

41. Mrs. Decker continued and told Plaintiff that Defendant Williams had likely made a mistake in telling Plaintiff that he would receive a letter.

42. Plaintiff asked Mrs. Decker why Defendant Williams, who is the Executive Director for the DRBA was on the airfield the day and why was he the point of Contact for Plaintif's termination.

43. Mrs. Decker told Plaintiff that he should call Defendant Williams and he may be able to tell him but that she was unsure.

44. Plaintiff told Mrs. Decker that his reviews were outstanding, and he was confused as to the abrupt termination, so he wanted an answer as to why it occurred.

45. Mrs. Decker acknowledged Plaintiff he had outstanding reviews, and that the termination was odd, and again Mrs. Decker stated she had no knowledge of the termination.

46. Plaintiff told Mrs. Decker that Defendant Berry had always applauded his work and that his evaluation was a reflection of Plaintiff's work performance.

47. Mrs. Decker told Plaintiff that she had heard Defendant Berry applaud Plaintiff's work performance and that any issues with work performance would be documented or placed in an evaluation.

48. Plaintiff informed Mrs. Decker that he disclosed the fact that he rented a hanger from Defendant DRBA when hired.

49. Mrs. Decker told Plaintiff that he did properly disclose such and that she did not find an issue with the filing.

50. Mrs. Decker also told Plaintiff that she would push for a clear answer from her supervisor, but that the matter was above her office, and she was limited as to what she was able to do.

51. Mrs. Decker told the Plaintiff that she would contact her supervisor Andrew Ritchie, Employee Relations & Compliance Manager for the DRBA.

52. There was no further contact from Mrs. Decker to the Plaintiff.

53. Plaintiff received a response from the NJ Department of Labor on August 11, 2022 "Based on available information you were discharged from the Delaware River Bay Authority without a specific reason, no proof has been submitted that this separation involved breaking a policy, your actions do not constitute a willful or deliberate disregard of a standard of behavior your employer has a right to expect therefore your discharge was not for misconduct connected with the work."

54. Plaintiff filed his Complaint with the NJ DCR/EEOC on July 22, 2022.

55. Thereafter the complaint bounced around from different offices until Plaintiff was advised by the Philadelphia Regional Office that the Federal Office had accepted the Complaint and would process the Complaint, notifying the DRBA of Plaintiff's Complaint.

56. On May 5, 2023, the DRBA responded to the complaint, but the response was replete with inaccuracies and made no mention of its prior allegation that Plaintiff was "doing business with the DRBA."

57. Instead, the response alleged "an untenable conflict of interest between Charging Party and DRBA."

58. It is clear from the temporal proximity and the lack of other support for Plaintiff's termination that Plaintiff was terminated for reporting racial discrimination of a coworker.

59. On August 30, 2023, Plaintiff received his right-to-sue letter from the EEOC.

### COUNT I

**Plaintiff vs. Defendant DRBA, Berry & Williams**
**(Violation of Title VII of the Civil Rights Act of 1964)**

60. Plaintiff hereby incorporates paragraphs 1 through 59 as though set forth in full herein.

61. Plaintiff has certain rights and Defendant DRBA has certain responsibilities pursuant to Title VII of the Civil Rights Act of 1964.

62. Defendant DRBA has a non-delegable duty to hire, train, supervise, investigate, and discipline or sanction its employees and to institute policies, practices, and customs so as to ensure that no employee discriminates against other employees due to their protected classification.

63. Defendants retaliated against Plaintiff for Plaintiff engaging in protected conduct by reporting racial discrimination that a coworker reported to him (Plaintiff).

64. The retaliation includes but is not limited to, Plaintiff's termination from his employment with Defendant DRBA.

65. As a direct and proximate result of retaliatory conduct, Plaintiff has been damaged.

66. The conduct of Defendants was knowing, intentional, and occurred with actual malice and in wanton and willful disregard of Plaintiff's civil rights.

67. Plaintiff has suffered annoyance, inconvenience, stress, anxiety, humiliation, depression, physical pain and suffering, emotional distress, and pecuniary loss.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under Title VII of the Civil Rights Act of 1964, punitive damages, reinstatement to his position, pre-and post-judgment interest, attorneys' fees and costs of suit and for such other relief that the Court deems equitable and just.

IONNO & HIGBEE  
Attorneys for the Plaintiffs

BY: /s/ *Sebastian Ionno*  
      SEBASTIAN B. IONNO

Dated: 11/24/2023

## DESIGNATION OF TRIAL COUNSEL

Please be advised that Sebastian B. Ionno, Esquire is hereby designated trial counsel in the above-captioned matter.

BY: /s/ Sebastian Ionno
SEBASTIAN B. IONNO

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues.

BY: /s/ Sebastian Ionno
SEBASTIAN B. IONNO

## CERTIFICATION

It is hereby certified pursuant to 28 U.S.C. § 1746 and pursuant to L.Civ.R. 11.2 that the matter in controversy is not presently the subject of any other action pending in any court or of an arbitration proceeding to date.

BY: /s/ Sebastian Ionno
SEBASTIAN B. IONNO